Good morning, ladies and gentlemen, and welcome to the Ninth Circuit Court of Appeal. We remind the appellant's attorneys, if they wish to reserve some time for rebuttal, that they do so on their own time, and we won't remind you, right? The first case, we'll take cases in the order in which they appear on the day sheet. First case is USA v. Gaspar Francisco Calderon, and that's submitted. The second case will be USA v. Joan M. Havens. Thank you, your honors. My name is David Ness, and I represent the defendant and appellant in this case, Ms. Joan Havens. Ms. Havens was convicted of threatening and resisting impeding a Forest Service officer. As we argued in the district court, she was not properly convicted of this charge for two reasons. First, her alleged threats were not real threats, and that's because they were conditioned upon Forest Service officers going onto her property and interfering with her property rights. But isn't that part of the problem? They said they didn't know where she thought the property boundary was. They weren't exactly sure, but when she approached all of these officers, they were a half mile away from her property. And although they all testified that they weren't completely sure exactly where her property was, they also knew that her property was roughly a half mile away from where this confrontation occurred. You think that they knew it, you think? Pardon me? I said, do you think they knew it? The reason I ask you that is because the record shows that they didn't do it. They didn't go onto the property at all, did they? Well, they didn't on that particular day. There was evidence through Ms. Havens, anyway, that she testified that Forest Service officers had come onto her property, they'd cut down trees, they'd moved her boundary markers. And that was the reason why she was so angry at them, and that was the reason why she approached them. And so she went up to them when they were at this location that was roughly a half mile away from her property, and she told them, if you guys come onto my property, if you guys cut down my trees, if you guys start fires on my property, I have an AR-15 and I know how to use it. Do you think that that's a justified threat of legal force by her, shooting a person in Montana? Can a person use deadly force to prevent the cutting down of a tree? Well, you can use deadly force to prevent a forcible felony, I think is what the law states in Montana. But that's not your defense, is it? To answer Judge Bea's question, I understood your first contention to be that the threat was not a real threat because it was conditioned, and we understand that clearly, but Judge Bea is asking a different question. Are you claiming justification? I'm sorry, I brought that up in my brief. I didn't necessarily raise that as a defense at the time. I just raised that, say, her... Commission of a forcible felony, but that force against a tree is a forcible felony that justifies the use of deadly shooting? I'm also talking about starting fires on her property, which I guess could be an arson. But again, I think I am correct. I think her whole statement was, is don't come onto my property. Don't come onto my property. Don't burn things down. So it was conditioned. And the threat was, I have an AR, I'm going to shoot you. Well... I know how to use it. I know how to use it, so take that as you will, but... What's the second reason you think that she was wrongfully convicted? Because it was never her intent to actually impede their lawful duties with respect to National Forest Service land. She wasn't telling them, don't do what you're doing on Forest Service land. She told them, don't come onto my property and cut down my trees and move my boundary markers. It doesn't sound like an argument that you'd make on appeal. It sounds like an argument you lost, as a matter of fact, in the trial court. She had her trial, and the judge found differently, right? Right. About what she, in fact, intended? But I don't know how you can divorce that intent from what she actually told them. What she actually told them was, don't come onto my property. So does that mean your argument is a Jackson argument? Is that there was insufficient evidence to support the finding? At bottom, yes, yes, Your Honor, that's what it is. So the judge didn't have enough, let me think about that. The judge didn't have enough circumstantial evidence or direct evidence, because he took testimony from several of the witnesses, to conclude that she intended the threat? Or to include that she intended to actually hurt somebody? Well, the argument with respect to what I'm talking about has to do that, even if she made the threat, even assuming this was a threat, it wasn't a conditional threat or anything, it was, what she told them was, don't come onto my property, don't vandalize my property. That's what she told them. Now, vandalizing a private citizen's property, starting fires on a private citizen's land, moving their boundary markers, can't be something that's related to legitimate Forest Service activity. So it was never her intent to stop them from taking care of the national forest lands. It was her intent to ask them to please stay off of her property and to not vandalize her property. What did we do with the testimony, which I think was uniform, that she came tearing up on her truck and slammed on the brakes and skidded 50 feet or something? And it was quite a, that context is important here, isn't it? Well, she was angry. Of course, the other side of that coin is too, is no one ever saw a gun. She didn't indicate that she had a gun. She didn't go to grab anything. So I think that has to be added into the mix as well. That and also with respect to, she wasn't telling them, again, don't do what you're doing out here a half mile from my property, but just don't come onto my property. That was what her so-called threat was conditioned on. So it's our position, it has been our position, that although this is somewhat of a Jackson argument, it also is legally, she should never have been convicted of these so-called threats. And that's because they were conditioned. They weren't something that she was, and even beyond that, they were not made with an intent to impede legitimate forest service duties. So for those reasons, Ms. Havens should be acquitted, and this court should reverse the district court's decision otherwise. Unless there's no other questions, I'll sit down. Thank you very much. Thank you. Good morning. May it please the court. My name is Jared Cobell. I represent the United States. In essence, what we have here is a woman with a land ownership dispute with the National Forest Service, and she's enforcing her version of that boundary dispute, her version of what property is hers, not mine. Mr. Cobell, let me ask you a question. Is it an element of the conviction of the charge on which she was convicted that her actions actually interfere with the duties of a federal officer, or is it sufficient simply to threaten a federal officer? Well, Your Honor, it would be sufficient to threaten a federal officer. The magistrate court found that she had violated the statute in three ways, by threatening, intimidating, and interfering. So for the portion of that, finding that she interfered, it would be necessary to conclude that she did actually interfere with the official duties of the Forest Service. Would it be sufficient if she just threatened them? Yes, it would. Or intimidated them? It would, Your Honor. So here she clearly in the record, during her testimony, speaks in depth about her knowledge of what the Forest Service boundaries are. She says that she's received letters telling her that part of her property is encroaching on that land. She has an outhouse, a fence that her grandfather built in 1922. She's received letters that told her that that's encroaching on Forest Service property, and if she doesn't remove it, she's going to be charged for the removal of it. So she's aware of the Forest Service boundaries. She's gone out and seen the markers. And she knows what the Forest Service says through their multiple surveys is Forest Service property. And so when she makes this threat and tells the officers, if you F'ers set foot on my property, I'm going to shoot and I will shoot. And that's the threat that she made to Nicholas Schreiner, the first of the three Forest Service fire burn crew that she approached that day, when she jumped out of her truck. What about opposing counsel's argument that even given all of that, I think his strongest argument is that the context is that this is half a mile away. So there was no sort of immediacy to this. So it wasn't at all a close call that she meant to imminently carry out this threat. What about that? Well, Your Honor, I think the evidence that came out at trial through the testimony of these officers were that they knew where the property boundaries were. They had a map. They knew what private property was hers. And they were only doing burn work, the fire mitigation work, cutting down, making slash piles, burning, doing this important work on Forest Service property. Right. But was it a half a mile away? They were at that time. And so when she came up and said, if you burn any of the piles on my property, and then she also said, you cut down 80 of my trees and you're going to pay for it. So on this day, were there burn piles on her property? I mean, piles of stuff waiting to be burned over on her property? There were. And according to her, her property, it was in Section 19. But you know what I'm saying? I'm trying to figure out if the scene was such that it looked like they were, the trees had been cut down. There was a dispute about whether some of those were hers. There were, if there were slash piles waiting to be burned as part of this project, then if I'm not trying to put words in your mouth, but I am trying to understand, you're not kind of going beyond what I understood from your briefing. Maybe in the record, this will be on the briefing. Yeah, Your Honor, I think the briefing is a little sparse in that area, explaining exactly what, where the slash piles were. During the trial, maps were brought up and pointed to where the slash piles were located. The Forest Service officers all said that they were only doing this work in national forests. They had no agreements with private landowners to do anything. So here they are, they're doing their work, cutting trees, burning piles. And she says, you cut my trees, and if you burn the piles on my land, then I will shoot you. I have an AR-15. If they had, forgive me for interrupting, if they had continued with their project, would those piles have been burned? Yes. Okay, so there's a question about whether they were going to get to them. Yeah, so in the record, the Forest Service officers who testified, they were in Unit 20, and the disputed portion of property is in Unit 19. And that's where they were going next. And because of these threats, they did not go and burn. And still to this day, those piles are left unburned. I see. Thank you. The, when viewed, when the evidence in this case is viewed in the light most favorable to the government, this court should affirm, as the district court did affirm, the magistrate court's verdict, finding that Ms. Havens had committed each element of the crime of interfering with the Forest Service officer. Unless there's any more questions, Your Honor. No, thank you. Thank you. Do you have anything on rebuttal? Rebuttal? I would argue one point of disagreement with counsel for the government. That is that I think the elements of this CFR provision do require that the threat has something to do with the official duties or with an intent to prevent a Forest Service officer from engaging in their official duties. If there's a threat just in and of itself, that may violate some other statute. But I don't think it violates the CFR position. Do we have a case that says that? Well, we do have a case. I think it's Scarborough. It's in my brief. It's a Sixth Circuit. I think it's a district court case out of the Sixth Circuit. But they set out the elements of this particular provision. Those elements are that the defendant threatened, resisted, intimidated, or interfered with to a Forest Service officer, three, who was engaged in, and I would add, and on account of their official duties in the protection or administration of the National Forest. So a mere threat that has nothing to do with what that officer's official duties are in protecting the National Forest I don't think would satisfy the elements of this statute. It may satisfy elements of some other statute, but not this one. That's my point. Counsel, do you have any response to the question or the explanation that there were these slash piles, even though they were half a mile away, some of them, that there were other slash piles waiting to be burned in the area where she thought it was her property? Do you agree with that representation of the record? I disagree in some respects. Part of that is maybe because I've actually been up on her property and I saw where things were. So the slash piles they were burning were half a mile away. Then they had these other slash, there's a road that runs along, I think, the west side of her property, and there were other slash piles across that Forest Service road. I don't think that Ms. Havens believes or ever argued that those slash piles were actually on her property. She did voice concern about them burning them because she said, I had to call 9-1-1 once or twice because these fires look like they're getting out of control. But what she was more concerned about is these trees that she alleges the Forest Service cut down on her property, and she was concerned they'd come down, cut more trees, and then come on her property and pile up these trees and burn them. So I think that's what she was mostly concerned about. Thank you. Thank you. Thank you very much, Counsel. The case of USA versus Havens will be submitted.
judges: Farris, Bea, Christen